United States District Court
Southern District of Texas
**ENTERED**
July 29, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BENITA RAMOS, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:19-109 |
| | § | |
| ANDREW SAUL, | § | |
| COMMISSIONER OF | § | |
| SOCIAL SECURITY, | § | |
|    Defendant. | § | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pending before the Magistrate Judge is the petition for review of the denial of Disability Insurance Benefits filed by Benita Ramos ("Ramos"). Dkt. No. 1.

Having reviewed the record and the pleadings, the Court recommends that the petition be granted. This recommendation follows from the fact that the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence.

## I. Background

### A. Procedural History

On February 16, 2017, Ramos applied to receive Disability Insurance Benefits and Supplemental Security Income. Dkt. No. 5-7, p. 341.[1] Ramos claimed that her disability effective date was February 6, 2017. Dkt. No. 5-8, p. 394.

On March 27, 2017, Ramos's claim was initially denied. Dkt. No. 5-5, pp. 229-30. On May 25, 2017, after reconsideration, Ramos's claim was again denied. Dkt. No. 5-6, p. 267. On July 18, 2018, a hearing was held before an ALJ. Dkt. No. 5-3, p. 65. On October 12, 2018, the ALJ decided that Ramos was not entitled to benefits. Id, p. 76. On April 29, 2018, the Appeals Council denied Ramos's timely request for review. Id, p. 14. Ramos has sought timely review of the Commissioner's decision in this Court.

---

[1] The citation to the record refers to the Bates-stamped number on each record page.

**B. Factual Context**

Ramos was born in March 1966 and was 50 years old at the time of her claimed disability onset date. Dkt. No. 5-7, p. 341. She is a widow with four children. Dkt. No. 5-10, p. 621.

Ramos had previously worked as a residential health care aide. Dkt. No. 5-3, p. 74.

The ALJ found that Ramos suffered from "osteoarthrosis of the left knee, degenerative joint disease of the left hip, cervical stenosis, lumbar radiculopathy, anxiety and depression." Dkt. No. 5-3, p. 68. These findings, generally, are undisputed. Instead, Ramos disputes the ALJ's finding that Ramos has the residual functional capacity (or "RFC") to still perform work.

**C. Medical History**

During her treatment and the disability process, Ramos was examined by multiple doctors. A summary of their observations and findings follows.

On February 13, 2017, Ramos was examined by Dr. Raquel Bolado at Su Clinica Familiar in Harlingen, Texas. Dkt. No. 5-9, p. 509. Ramos complained of pain to her back, arms and legs. Id. On examination, Ramos showed normal spine rotation, normal spinal range of motion and normal gait. Id. She was prescribed Naproxen and Meloxicam for the pain. Id.

On May 8, 2017, Ramos had a follow up visit with Dr. Bolado. Dkt. No. 5-9, p. 552. Ramos complained of chronic neck pain, stating that the Meloxicam was "not helping enough." Id. Her spinal x-rays showed degenerative disc disease, osteoarthritis and spurs. Id. Ramos also stated that she quit one of her jobs due to the pain. Id. She was diagnosed with cervical spondylosis with radiculopathy. Id., p. 555.

On September 19, 2017, Ramos was seen by Dr. Victor Pallares, based on a referral by Dr. Bolado. Dkt. No. 5-10, p. 619. Ramos complained of neck pain of "almost unbearable intensity" and knee pain of "severe intensity." Id., p. 620. Upon examination, Ramos had limited range of motion in arms, spine and legs. Id. Dr. Pallares noted that

2

Ramos had "failed to obtain long-term relief of the pain with conservative therapy." Id., p. 623.

On January 19, 2018, Ramos was seen by Dr. Bolado for a follow-up visit after a trip to the emergency room. Dkt. No. 5-11, p. 715. Earlier that month, Ramos lost her balance and fell in her home. Id. She reported that she hurt her left knee, left hip and right ribs in the fall, which made her pain worse. Id. Ramos reported that she needed neck surgery, but was physically too weak and her insurance did not approve physical therapy. Id. On exam, Ramos showed decreased range of motion with her left knee. Id., p. 718.

On February 20, 2018, Ramos was seen by Dr. Michael Eisen, an orthopedist. Dkt. No. 5-9, p. 575. Dr. Eisen diagnosed Ramos with vastus medialis oblique atrophy and concluded that there were "degenerative changes involving the medial meniscus without a frank tear." Id., p. 577. Dr. Eisen referred her for physical therapy and stated that if there was "notable improvement, we could consider a corticosteroid injection." Id.

On March 6, 2018, Ramos was seen by Dr. Eisen for a follow-up visit. Dkt. No. 5-10, p. 603. Ramos reported that her insurance denied coverage for any physical therapy. Id., p. 604. Ramos reported using a knee brace for her left knee, "which seems to help." Id. Ramos was given a corticosteroid injection. Id., p. 605.

### D. Disability Evaluations

Two state agency consultants – Dr. Scott Spoor and Dr. Judy Panek – reviewed Ramos's medical records regarding her physical abilities as part of the SSD process. Furthermore, Dr. Eisen submitted opinions as to Ramos's work capabilities.

#### 1. Dr. Spoor

On March 27, 2017, Dr. Spoor, a state agency medical consultant, reviewed Ramos's medical records in determining a residual functional capacity assessment. Dkt. No. 5-5, pp. 217-28. Dr. Spoor found that Ramos's impairments "does not significantly limit physical or mental ability to do basic work activities." Id., p. 227. In sum, he found that she was not physically disabled in any way.

### 2. Dr. Panek

On May 23, 2017, Dr. Panek, a state agency medical consultant, also reviewed Ramos's medical records to assess her residual functional capacity. Dkt. No. 5-5, pp. 231-54. Dr. Panek also found that Ramos's impairments were "non-severe" and did not "result in significant limitations" in her ability to perform basic work. Id.

### 3. Dr. Eisen

On March 6, 2018, Dr. Eisen issued his first opinion concerning Ramos's ability to work. Dkt. No. 5-9, p. 582. Dr. Eisen opined that Ramos could not walk for one city block without needing rest, could continuously stand or sit for 15 minutes at a time and could stand or sit for less than 2 hours total in an eight-hour workday. Id. He also opined that Ramos required a job that permitted her to shift positions at will and allow her to take unscheduled work breaks as her symptoms dictated. Id. Dr. Eisen stated that Ramos could not safely lift any weight during her workday and would have "significant limitations" in her ability to reach, handle and manipulate objects with her hands. Id. He also stated that she could never twist, stoop, crouch, climb stairs or climb ladders. Id., p. 584.

On May 4, 2018, Dr. Eisen issued a second opinion regarding Ramos's ability to work. Dkt. No. 5-10, p. 670. Dr. Eisen's second opinion reiterated all of his findings from his first opinion.

Before turning to and examining the specifics of the ALJ's decision in Ramos's case, it is first necessary to understand the disability determination process, as it relates to disability applications.

## II. Determining Disability – The Five-Step Process

A claimant must be disabled to receive benefits under Title II of the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (emphasis added).

To determine whether a claimant is disabled, the Commissioner is required to

employ a sequential five-step process. 20 C.F.R. § 404.1520; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The burden of proof lies with the claimant at each step; except for step five, which contains a shifting burden. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). If at any stage the claimant fails to make the required showing, the evaluation process stops, and the claimant is determined to not be disabled. Harrell v. Bowen, 862 F.2d 471 (5th Cir. 1988).

### 1. Step One

In the first step, the claimant must show that he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as work that involves "doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit." 20 C.F.R. § 404.1510. If the claimant is working and the work constitutes substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b).

### 2. Step Two

The second step of the process, requires the claimant to show that his or her impairment is medically severe. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one which "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Unless the impairment is expected to result in death, it must have lasted – or be expected to last – for at least 12 months. 20 C.F.R. § 404.1509. If a claimant cannot show a medically severe impairment that meets the duration requirement, the claimant is not disabled under the law. 20 C.F.R. § 404.1520(c). As noted, this showing applies to both physical and mental impairments.

### 3. Step Three

At the third step, the claimant must demonstrate an impairment that is listed in Appendix 1 to 20 C.F.R. § 404.1520(p) (a "listed impairment") – or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant can show that the impairment meets the duration requirement and is a listed impairment, then he or she is adjudged to be disabled without regard to age, education, or work experience. 20 C.F.R. § 404.1520(d).

If the claimant cannot show a listed impairment – or its equivalent – the process continues to step four. 20 C.F.R. § 404.1520(e).

### 4. Step Four

In step four, the claimant must show that he or she lacks the "residual functional capacity" to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as gainful activity performed within the last 15 years, where the claimant's employment lasted long enough for the claimant to learn how it is performed. 20 C.F.R. § 404.1560(b)(1).

#### a. Residual Functional Capacity.

Residual functional capacity ("RFC") "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Irby v. Barnhart, 180 Fed. App'x. 491, 493 (5th Cir. 2006) (unpubl.) (citing Social Security Ruling 96-8p).[2]

In addressing the symptoms raised by the claimant, the ALJ is required to follow a two-step process. 20 C.F.R. § 404.1529(a); Herrera v. Commissioner of Social Sec., 406 Fed. App'x. 899, 905 (5th Cir. 2010) (unpubl.). "Both SSR 96-7p and 20 C.F.R. § 404.1529 emphasize that subjective symptoms alone, absent some indication that they are supported by objective medical evidence, fail to support a disability finding." Salgado v. Astrue, 271 Fed. App'x. 456, 460 (5th Cir. 2008) (unpubl.). Thus, to establish a disability, the criteria in both of the following steps must be satisfied.

The first step is a determination of whether the claimant suffers from a medically determinable impairment that is "reasonably capable of producing" the claimed symptoms. SSR 96-7p. Claimed symptoms "will not be found to affect [one's] ability to do basic work

---

[2] "The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions." Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).

6

activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). The ALJ proceeds to the second step only if the claimant is found to have a medically determinable impairment that could cause the alleged symptoms. Winget v. Astrue, 2007 WL 4975206, *10 (W.D. Tex. 2007) (unpubl.). In other words, if the evidence does not objectively support a conclusion that the alleged cause is reasonably capable of producing the symptom, then a finding of no disability is required.

On the other hand, if the medical evidence objectively identifies an impairment that could reasonably produce the claimed symptom, the inquiry turns to the severity and impact of that symptom. The second step is to evaluate the "intensity, persistence, and limiting effects of the individual's symptoms" on their ability to do basic work activities. SSR 96-7p. In performing this evaluation, the ALJ considers the objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms. Id.

The ALJ also considers treatment – other than medication – that the individual receives or has received for relief of pain or other symptoms. Finally, the ALJ also considers any other factors relating to the claimant's functional limitations and restrictions resulting from pain or other symptoms. Id.

If the ALJ finds that the claimant's current RFC is incompatible with the ability to perform his or her prior relevant work, the process moves to step five.

### 5. Step Five

The fifth step requires the Commissioner to show that the claimant is capable of performing other work. 20 C.F.R. § 404.1520(a)(4)(v). Once the Commissioner makes the requisite showing, the burden shifts to the claimant to rebut the Commissioner. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002).

The Commissioner considers the claimant's RFC as well as the claimant's age,

education, and experience, in determining whether the claimant can perform other substantial work within the national economy. 20 C.F.R. § 404.1520(g)(1); Masterson, 309 F.3d at 272. Based upon these considerations, the Commissioner must show that the claimant can perform work in the national economy and that such work exists in significant numbers in that economy.

If the Commissioner can show that the claimant can perform other substantial work within the national economy, the claimant is adjudged not to be disabled. 20 C.F.R. § 404.1520(g)(1). If the Commissioner fails to show that the claimant is capable of performing other work, or if the claimant successfully rebuts the Commissioner's findings, the claimant is found to be disabled and is entitled to disability benefits. Id.

### III. The ALJ's Decision

In step one, the ALJ found that Ramos had not engaged in substantial gainful activity since February 6, 2017. Dkt. No. 5-2, p. 68. That finding is not challenged.

In step two, the ALJ found that Ramos suffered from osteoarthritis of the left knee, degenerative joint disease of the left hip, cervical stenosis, lumbar radiculopathy, anxiety and depression. Dkt. No. 5-3, p. 68. This finding is also unchallenged.

The ALJ – in his step three analysis – found that Ramos did not have an impairment or combination of impairments that "equal[ed]" a listed impairment, moving the process to step four. Dkt. No. 5-3, pp. 68-70. In determining whether Ramos had a listed mental impairment, the ALJ found that Ramos had moderate limitations with "concentrating, persisting or maintaining pace" and that she had mild limitations in interacting with others. These findings — as well as the overall finding that she did not have a listed impairment — are unchallenged.

In step four, the ALJ found that Ramos had the RFC to "lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; to stand and/or walk 6 hours in an eight-hour workday; and to sit for six hours in an eight-hour workday." Dkt. No. 5-3, p. 70. The ALJ found that Ramos could never climb ladders, but could occasionally balance, stoop, kneel, crouch, crawl and climb stairs. Id. The ALJ found that Ramos had some

psychological limitations, but was "able to understand, remember and carry out simple tasks; make simple decisions; and maintain concentration and persistence long enough to complete simple tasks." Id.

In arriving at this finding, the ALJ found that Ramos's statements "concerning the intensity, persistence and limiting effects" of her symptoms was "not entirely consistent" with the objective medical evidence. Dkt. No. 5-3, p. 71. The ALJ specifically found that Ramos's daily activities – preparing meals, going out alone, shopping, driving, attending events – were not as limited as her description of her pain and symptoms would lead someone to believe. Id., p. 73.

The ALJ gave limited weight to the opinions of the state agency consultants, finding that new evidence had been admitted into the record since they gave their opinions, diminishing the value of those opinions. Dkt. No. 5-3, p. 73.

The ALJ also discounted Dr. Eisen's opinion as her treating physician, noting that Dr. Eisen had only been treating Ramos for a month before he gave his opinion. Dkt. No. 5-3, p. 73. The ALJ also noted that Dr. Eisen only treated Ramos four times during her alleged disability period and that "the course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were as limited as the doctor has reported." Id.

The ALJ gave no weight to a letter from Dr. Bolado, which stated that Ramos "was limited in her ability to get treatment due to insurance coverage." Dkt. No. 5-3, p. 73. The ALJ noted that the letter gave no opinion as to Ramos's "mental or physical capacity for work activities." Id.

The ALJ derived Ramos's residual functional capacity from "the objective medical evidence of record and the claimant's daily activities." Dkt. No. 5-3, p. 74.

The ALJ found that Ramos was unable to perform her past relevant work as a residential care aide. Dkt. No. 5-3, p. 74.

Based upon the testimony of the vocational expert, in step five, the ALJ found that

there were sufficient jobs in the national economy, such as mail clerk and garment sorter, that Ramos could still perform. Dkt. No. 21-1, p. 33.

Based upon Ramos's RFC and her ability to still perform certain work, the ALJ concluded that Ramos was not disabled. Dkt. No. 21-1, p. 33-34.

## IV. Applicable Law

### A. Standard of Review

The Court's review of the Commissioner's decision to deny disability benefits is limited to two inquiries: (1) whether the final decision is supported by "substantial evidence;" and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Moore v. Sullivan, 919 F.2d 901, 904 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts within the evidence are not for the court to resolve." Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The decision by the ALJ must "stand or fall" on the rationale set forth in the ALJ's opinion. Newton v. Apfel, 209 F.3d at 455. The Court will not uphold the ALJ's decision by finding or creating a different, better, or more adequate basis. Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196 (1947). "Reviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ." Orr v. Commissioner of Social Security Administration, Civil No. 3:08-CV-1592-K, 2009 WL 2337793 at *9 (N.D. Tex. July 27, 2009) (citing Bagwell v. Barnhart, 338 F. Supp.2d 723, 735 (S.D. Tex. 2004)).

Furthermore, the Court generally employs a harmless error standard in reviewing administrative proceedings. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required"). The Court will not reverse a judgment unless "the substantial rights of a party have been affected." Id. (remand was not warranted when the claimant would not have been found disabled, even if the Court applied his proffered standard).

**V. Analysis**

Ramos raises three claims to relief, which the Court restates as follows:

1. The ALJ's RFC and hypothetical questions to the vocational expert failed to include all of the limitations that the ALJ found credible.

2. The occupations listed by the ALJ are not ones that a person with Ramos's RFC could actually perform.

3. The ALJ failed to give deference to Dr. Eisen's opinion, substituting his own unsupported lay opinion, when determining Ramos's RFC.

The Court will address each of these claims in turn; the first two claims should be denied, but the final claim mandates remand.

**A. Limitations**

Ramos argues that the ALJ's RFC determination and hypothetical questions to the vocational expert "failed to contain all of the limitations that the ALJ found credible." Dkt. No. 8, p. 4.

When determining, at Step 3, whether Ramos had an impairment that made her per se disabled, the ALJ found that Ramos had "a moderate limitation" in the area of "concentrating, persisting or maintaining pace." Dkt. No. 5-3, p. 69. The ALJ, at this same stage, also found that Ramos had "a mild limitation" with regards to "interacting with others." Id. Ramos argues that these findings were not carried over into the RFC assessment, making the RFC incomplete as well as the questions to the vocational expert inaccurate.

11

Internal Social Security rulings state that the limitations identified at Step 3 "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p.  Moreover, the findings concerning Ramos's mild and moderate limitations were folded into the finding that she was able to "maintain concentration and persistence long enough to complete simple tasks." Dkt. No. 5-3, p. 70.  Thus, the limitations identified at Step 3 were carried over into the RFC in a slightly different form, but were not ignored. See Gonzalez v. Comm'r of Soc. Sec. Admin., No. 3:10-CV-02003-O BF, 2012 WL 1058114, at *7 (N.D. Tex. Jan. 26, 2012), report and recommendation adopted sub nom. Gonzalez v. Astrue, No. 3:10-CV-2003-O, 2012 WL 1065459 (N.D. Tex. Mar. 29, 2012) (holding that ALJ included functional limitation that claimant had moderate difficulties with concentration in the RFC when the RFC stated that he was limited to simple tasks and simple instructions.).

Furthermore, the RFC regarding simple tasks was used in the hypotheticalquestions to the vocational expert.  Thus, this consideration was implicitly, if not expressly used in formulating the ALJ's conclusion.  Accordingly, this claim should be denied.

**B. Employment**

Ramos asserts that "the ALJ failed to identify any occupations that an individual with the RFC [that the ALJ] determined could perform." Dkt. No. 8, p. 3.  The crux of the argument appears to be that the ALJ's RFC limited Ramos to simple tasks, which equates with Level 1 reasoning in the Dictionary of Occupational Titles ("DOT"), but that the occupations identified by the ALJ in his decision (mail clerk and garment sorter) require Level 2 reasoning.

In determining her RFC, the ALJ limited Ramos to the ability to "understand, remember and carry out simple tasks; make simple decisions; and maintain concentration and persistence long enough to complete simple tasks." Dkt. No. 5-3, p. 70.

The DOT defines Level 1 reasoning as the ability to "carry out simple one- or two-step instructions" as well as being able to handle "standardized situations with occasional or no variables in or from these situations encountered on the job." Dictionary of

12

Occupational Titles, Appendix C – Components of the Definition Trailer, 1991 WL 688702.  Level 2 reasoning is defined as the ability to "carry out detailed but uninvolved written or oral instructions" as well as the ability to handle "problems involving a few concrete variables in or from standardized situations." Id.  Level 3 reasoning requires the ability to "carry out instructions furnished in written, oral, or diagrammatic form" as well as the ability to address "problems involving several concrete variables in or from standardized situations." Id.

The DOT identifies garment sorter as a job that that requires Level 2 reasoning. Dictionary of Occupational Titles 222.687-014 Garment Sorter, DICOT 222.687-014. Mail clerk is identified as a job requiring Level 3 reasoning. Dictionary of Occupational Titles 209.687-026 Mail Clerk, DICOT 209.687-026.

While this would appear to be an irresolvable conflict on its face – with the DOT requiring a higher reasoning level than Ramos was limited to – Ramos's argument appears to conflate two different concepts: the type of tasks that she can complete and the level of instructions she can handle.

The RFC limited her to simple tasks and simple decisions; it made no reference to the level of instruction those tasks and decisions required.  The Fifth Circuit has not addressed this precise issue, but several courts of appeals have held that a person who is limited to simple tasks and simple decisions can be asked to perform jobs requiring Level 2 and Level 3 reasoning. See Moore v. Astrue, 623 F.3d 599, 604 (8th Cir. 2010) (a claimant who was limited to a job requiring simple tasks and simple instructions could perform a job requiring Level 2 reasoning); Hurtado v. Comm'r of Soc. Sec., 425 F. App'x 793, 795 (11th Cir. 2011) (claimant who was limited to simple routine work could perform jobs requiring Level 2 reasoning); Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019) (claimant who was limited to simple, routine tasks could perform a job requiring Level 2 reasoning); Money v. Barnhart, 91 F. App'x 210, 215 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive"); Monateri v. Comm'r of Soc. Sec., 436 F. App'x 434, 446 (6th Cir. 2011)

(rejecting "the proposition that jobs requiring reasoning levels two or three are inconsistent as a matter of law with a limitation to simple work.").

The Court notes that "the DOT lists the maximum requirements for a position as it is generally performed, not the full range of requirements." Haas v. Barnhart, 91 F. App'x 942, 948 (5th Cir. 2004). In other words, the fact that the DOT lists a certain reasoning requirement does not mean that every variation of that job requires that level of reasoning. See Carey v. Apfel, 230 F.3d 131, 145 (5th Cir. 2000) ("the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job").

Furthermore, even if there is a conflict between the DOT and the vocational expert's testimony, "the ALJ may rely upon the vocational expert's testimony[,] provided that the record reflects an adequate basis for doing so." Carey, 230 F.3d at 146. The vocational expert's testimony about these jobs went unchallenged. Dkt. No. 5-4, pp. 129-134. The vocational expert's "clear and unchallenged testimony" that Ramos could perform these jobs is adequate support for the ALJ's determination that Ramos "could perform other available work." Carey, 230 F.3d at 147. This claim is not a basis for relief.

### C. Medical Opinion

Ramos argues that the ALJ's determination of her RFC disregarded Dr. Eisen's opinion, substituting his own lay opinion of the evidence. The Court finds that the ALJ's determination of Ramos's RFC was not supported by substantial evidence, mandating remand.

"Although some determinations, such as disability and RFC, are legally reserved for the Commissioner, Social Security guidelines require adjudicators making these determinations to consider the opinions of medical sources." Giles v. Astrue, 433 F. App'x 241, 247 (5th Cir. 2011). "A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence (including other medical source statements that may be in the case record) when assessing an individual's RFC." Social Security Ruling (SSR) 96-5p. Titles

14

II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 FR 34471-01.[3]

The Fifth Circuit has "long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Kneeland v. Berryhill, 850 F.3d 749, 760 (5th Cir. 2017) (internal quotation marks omitted). On the other hand, "when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony." Id. Good cause includes "disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). As relevant here, the ALJ is entitled to consider the "length of the treatment relationship and the frequency of examination" in determining how much weight to give a treating medical opinion. 20 C.F.R. § 404.1527(c)(2)(i).

In this case, the ALJ rejected every medical opinion as to Ramos's physical limitations. The state agency consultants held that Ramos's physical limitations were non-severe, creating no additional limitations. Dkt. No. 5-5, pp. 221, 227, 241, 253. The ALJ rejected those opinions as being overcome by new medical evidence. The opinions were rendered in March and May 2017, before Ramos fell in her home in January 2018.

Moreover, the ALJ did not specifically note the weight that he gave to Dr. Eisen's medical opinion, but he clearly discounted it. For example, Dr. Eisen found that Ramos

---

[3] This Social Security ruling applies to claims filed before March 27, 2017; it was rescinded for claims filed after that date. Federal Register Notice Vol. 82, No. 57, page 15263 effective March 27, 2017. Ramos's claim was filed on February 16, 2017, so SSR 96-5p is still the applicable legal standard in this case. Under the new standard, the ALJ is not required to assign specific weights to medical opinion testimony based on the nature of the relationship between the claimant and the medical professional. 20 C.F.R. § 404.1520(c). It does not appear that the result in this case would be different under the new standard. In the instant case, the ALJ assigned no weight to any of the medical testimony presented and, instead, independently considered his own evaluation of the evidence.

15

could not lift less than 10 pounds regularly during her workday and had "significant limitations" in her ability to reach, handle and manipulate objects. Dkt. No. 5-9, p. 583. The ALJ rejected Dr. Eisen's opinion as the treating physician because he: (1) only treated Ramos for one month prior to issuing his first opinion; (2) only treated her four times during her alleged disability period; and, (3) the course of treatment followed by Dr. Eisen was milder than one that would be seen for the level of severity that he opined. Dkt. No. 5-3, p. 73.

The ALJ was entitled to give less weight to Dr. Eisen's opinion, based upon the length of the treatment relationship and the extent to which it conflicted with the medical evidence. Jones v. Colvin, 638 F. App'x 300, 304 (5th Cir. 2016). This decision, however, poses a problem: if Dr. Eisen's opinion is set aside, there is no evidence in the record as to how Ramos's physical ailments would impact her ability to work.

All of the medical opinion evidence as to Ramos's limitations was rejected; the state agency consultations opined that Ramos had no limitations, while Dr. Eisen opined that Ramos would be able to sit or stand for 15 minutes at a time and would be able to stand or sit for less than 2 hours total in an eight hour workday. After rejecting these largely opposite opinions, the ALJ reviewed the medical records and Ramos's daily activities and came to his own conclusion as to the effect of Ramos's impairments. The ALJ concluded that she could stand or sit for six hours total in a workday. That is an impermissible course, producing a finding that is not supported by substantial evidence. Williams v. Astrue, 355 Fed. App'x. 828, 832 (5th Cir. 2009) (unpubl.) (ALJ may not rely on his own medical opinions, derived from raw medical records, to determine the limitations a disability has on a claimant's ability to work) (citing Ripley).

Williams – although an unpublished decision – contains similar facts and is instructive. In Williams, the claimant alleged she was disabled because of pain in her lower back and shoulders, muscle spasms, and carpal tunnel syndrome. Williams at 829. Three doctors examined Williams and opined that she was limited to sedentary work. Id. The ALJ made specific findings discounting the opinions of the three doctors. Williams at 831.

The ALJ found that Williams could stand or walk for six hours in an eight-hour workday, which equates to light work. Id. The ALJ based his decision on the raw medical records that showed "only mild to moderate stenosis" in Williams's lumbar spine and "only posterior spurring in her cervical spine." Id.

The Fifth Circuit concluded that, even if the ALJ was entitled to discount the opinions of the three doctors, there was no evidence supporting the ALJ's finding that Williams could stand or walk for six hours in an eight-hour workday. Williams at 831. With no medical opinion evidence available – based upon the ALJ discounting the doctor's opinions – there was no evidence that Williams could perform light work. The Fifth Circuit, citing Ripley, noted that the ALJ "may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." Williams at 832, n. 6. Because no substantial evidence existed as to the effects of Williams's impairments on her ability to stand or walk for six hours in an eight hour workday, the Fifth Circuit remanded the case for further development. The ALJ's conclusions in the instant case suffer from similar defects.

As further support for his conclusions, the ALJ's decision emphasizes Ramos's representations as to her ability to perform daily activities. Dkt. No. 5, App. 3, p. 16; Dkt. No. 9, p. 9. While it is appropriate to consider the claimant's daily activities in deciding the claimant's disability status, that consideration is not dispositive. Stanridge-Salazar v. Massanari, 254 F.3d 70, 2001 WL 502506 at *2 (5th Cir. 2001) (unpubl.) (citing Leggett v. Chater, 67 F.3d 558, 565 n. 12 (5th Cir. 1995)). Moreover, Ramos's representations must be considered in context. Ripley at 558, n. 28.

The ALJ noted that Ramos was able to "prepare simple meals, go out alone, go shopping and sometimes drive." Dkt. No. 5-3, p. 73. He also notes that she "regularly goes out to places like church, kids' events and Walmart." Id. As far as preparing simple meals, Ramos stated that she prepares frozen dinners, but requires the assistance of her children

17

to complete this task. Dkt. No. 5-8, p. 406. As for going out alone, Ramos reported that there are times she had to call her oldest child to assist her after she has driven from Harlingen to Brownsville by herself, because she cannot complete the return trip to Harlingen without assistance. Id., at 407. Ramos noted that the pain medication for her neck made her drowsy. Id., p. 431. When she shopped, it would take her 4 to 5 hours to complete the task. Id. She also stated that she was "unable to hangout with [her] grandson [and] kids, also unable to travel, go to church or enjoy watching movies," since her pain began. Id.

In short, the ALJ rejected the medical opinion of the various medical doctors, who had evaluated Ramos or her medical records, and came to his own conclusions as to the effect of Ramos's impairments on her ability to carry out tasks, including standing, sitting and lifting. Based upon that interpretation, the ALJ concluded that Ramos could "lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; to stand and/or walk 6 hours in an eight-hour workday; and to sit for 6 hours in an eight-hour workday." Dkt. No. 5-3, p. 70. Given the method and evidence employed by the ALJ in arriving at his decision; the complete absence of medical opinion evidence accepted or employed by the ALJ; and the failure to account for the limitations on daily activities reported by Ramos, the ALJ's decision is not supported by substantial evidence.

Accordingly, the Court must consider whether this error impacted Ramos's substantial rights.

### D. Prejudice

To merit relief, Ramos must show that her rights were substantially harmed. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required"). The Court will not reverse a judgment unless "the substantial rights of a party have been affected." Id. (remand was not warranted when the claimant would not have been found disabled, even if the Court applied his proffered standard). The errors made by the ALJ in determining Ramos's RFC, however, were not harmless.

From the content of the ALJ's decision and the evidence upon which he relied, it is unclear at what exertion level Ramos's RFC should have been classified. "Conflicts within the evidence are not for the court to resolve." Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990). If the fact-finder ignores the opinions of Dr. Eisen and the state agency consultants, there is no evidence upon which to identify Ramos's actual exertion level.

This result is contrary to the ALJ's obligation to fully and fairly develop the record. Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996). The record does not establish Ramos's capacity to fulfill various exertion levels on the job site. The absence of evidence sufficiently establishing this critical point short-circuited the five-step process. Because substantial evidence does not exist to support the ALJ's decision, the case must be remanded for further development. Williams, 355 Fed. Appx. at *4.[4]

## VI. Recommendation

It is recommended that the petition for review of the denial of Disability Insurance Benefits filed by Benita Ramos be granted. This case should be remanded to the Commissioner of Social Security for further hearings not inconsistent with this report and recommendation.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings

---

[4] While the Court holds that the first two claims raised are not a valid basis for relief, they should not be read to bar reconsideration of any issue on remand. The Court is merely holding that they are not a valid basis for relief based on the record as it currently exists.

without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

    DONE at Brownsville, Texas, on July 29, 2020.

                                                                         Ronald G. Morgan  
                                                                          United States Magistrate Judge